RECORD NO. 13-2181

In The

# United States Court of Appeals
### For The Fourth Circuit

## METROPOLITAN HEALTH CORPORATION, d/b/a Metropolitan Hospital; MICHAEL FAAS,

*Plaintiffs – Appellees*,

**v.**

## MARY TERESA SCOTT,

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH

————————

BRIEF OF APPELLEES

————————

Edward L. Embree, III
MOORE & VAN ALLEN PLLC
Post Office Box 13706
Research Triangle Park, North Carolina 27709
(919) 286-8000

Luis M. Lluberas
MOORE & VAN ALLEN PLLC
100 North Tyron Street, Suite 4700
Charlotte, North Carolina 28202
(704) 331-1000

*Counsel for Appellees*

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>13-2181</u>        Caption: <u>Metropolitan Health Corporation; Michael Faas v. Mary Teresa Scott</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Michael Faas</u>
(name of party/amicus)

_____

who is <u>_____Appellee_____</u>, makes the following disclosure:
           (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                        ☐YES ☑NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☑YES ☐NO
      If yes, identify entity and nature of interest:

    Chubb Insurance, which paid a portion of Appellee's defense costs in the Michigan civil action
    that resulted in sanctions judgment against Apellant.  The dischargeability of Appellant's liability
    under that judgment is the subject of this appeal.  If the Appellees are ever able to collect on
    the judgment, then Chubb Insurance would be entitled to reimbursement for defense costs.

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☑YES ☐NO
      If yes, identify any trustee and the members of any creditors' committee:

    Joseph N. Callaway, Esq.
    Battle, Winslow, Scott & Wiley, PA
    P.O. Box 7100
    Rocky Mount, NC  27804-0100
    Phone:  (252) 451-9635

Signature: _____    Date: __October 2, 2013__

Counsel for: Michael Faas

# CERTIFICATE OF SERVICE
***************************

I certify that on __October 2, 2013__ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Pamela W. McAfee
Nelson Mullins Riley & Scarborough LLP
GlenLake One, Suite 200
4140 Parklake Avenue
Raleigh, North Carolina 27612

Joseph S. Dowdy
Nelson Mullins Riley & Scarborough LLP
GlenLake One, Suite 200
4140 Parklake Avenue
Raleigh, North Carolina 27612

Laura J. Wetsch
Winslow & Wetsch, PLLC
416 Morson Street
Raleigh, NC 27601-0000

_____
(signature)

__October 2, 2013__
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2181__       Caption: __Metropolitan Health Corporation; Michael Faas v. Mary Teresa Scott__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Metropolitan Health Corporation, d/b/a Metropolitan Hospital__
(name of party/amicus)

_____

who is _____Appellee_____ , makes the following disclosure:
      (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☑YES ☐NO
If yes, identify entity and nature of interest:

> Chubb Insurance, which paid a portion of Appellee's defense costs in the Michigan civil action that resulted in sanctions judgment against Apellant.  The dischargeability of Appellant's liability under that judgment is the subject of this appeal.  If the Appellees are ever able to collect on the judgment, then Chubb Insurance would be entitled to reimbursement for defense costs.

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
If yes, identify any trustee and the members of any creditors' committee:

> Joseph N. Callaway, Esq.
> Battle, Winslow, Scott & Wiley, PA
> P.O. Box 7100
> Rocky Mount, NC  27804-0100
> Phone: (252) 451-9635

Signature: _____          Date: _October 2, 2013_

Counsel for: Metropolitan Health Corporation

## CERTIFICATE OF SERVICE
****************************

I certify that on _October 2, 2013_ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Pamela W. McAfee
Nelson Mullins Riley & Scarborough LLP
GlenLake One, Suite 200
4140 Parklake Avenue
Raleigh, North Carolina 27612

Joseph S. Dowdy
Nelson Mullins Riley & Scarborough LLP
GlenLake One, Suite 200
4140 Parklake Avenue
Raleigh, North Carolina 27612

Laura J. Wetsch
Winslow & Wetsch, PLLC
416 Morson Street
Raleigh, NC 27601-0000

_____
(signature)

_October 2, 2013_
(date)

07/19/2012
SCC

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF THE CASE .................................................................... 1

    1.    Overview of the Case ............................................................ 1

    2.    The Commencement and Consensual Resolution of the Qui Tam Action ....................................................................... 2

    3.    Scott Continues to Press Illegitimate Claim for Wrongful Termination and Commits Litigation Misconduct ................ 5

    4.    Scott's Debt to Metropolitan Held to be Non-dischargeable ............. 11

SUMMARY OF ARGUMENT ................................................................. 12

ARGUMENT ......................................................................................... 13

    I.    THE LOWER COURTS WERE CORRECT TO APPLY COLLATERAL ESTOPPEL TO THE MICHIGAN SANCTIONS OPINIONS ........................... 13

        A.    The Issue of Willfulness was Identical to the Issue Determined by the Michigan U.S. District Court ................... 13

            1.    Litigation Misconduct is Per Se a Willful and Malicious Injury ........................................................ 16

            2.    If an Analysis of Scienter is Necessary, Then the Lower Courts' Analysis was Proper as the Fourth Circuit Approves of the Use of the "Objective Approach" ........................................................... 18

            3.    If the "Subjective Approach" is Required, Then the Bankruptcy Court's Determination is Sufficient Given the Facts of this Case .......................................... 21

B.   The Issue of Willfulness was Actually Litigated......................26

C.   Scott was Given a Full and Fair Opportunity to Litigate
     the Issue of Bad Faith ...............................................................28

     1.   Scott's Failure to Request an Evidentiary Hearing
          on the Issue of Her Bad Faith Precludes her from
          Raising the Lack of a Hearing as Grounds to Deny
          the use of Collateral Estoppel.........................................28

     2.   The Michigan U.S. District Court's Decision to
          Not Hold a Hearing Before Sanctioning Scott Does
          Not Violate Scott's Right to Due Process .....................32

     3.   The Michigan U.S. District Court Was Not
          Required to Conduct a Full Evidentiary Hearing
          Before Sanctioning Scott ................................................35

D.   The Bankruptcy Court Correctly Applied Collateral
     Estoppel.....................................................................................39

     1.   Scott's Failure to Request an Evidentiary Hearing
          on the Issue of Sanctions Weighs Heavily in Favor
          of the Application of Collateral Estoppel......................39

     2.   The Sanctions Opinions are Meant to Address
          Litigation Misconduct and do not Pose a Risk to
          Future Whistleblowing Activity .....................................41

CONCLUSION ....................................................................................42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbo v. Rossi, McCreery & Assocs. Inc. (In re Abbo)*,
  168 F.3d 930 (6th Cir. 1999) ........................................................25

*Allen v. McCurry*,
  449 U.S. 90 (1980)........................................................................39

*Alyeska Pipeline Service Co. v. Wilderness Society*,
  421 U.S. 240 (1975)......................................................................10

*Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971)..................................................................28, 40

*Bradley v. Pittsburgh Bd. of Educ.*,
  913 F.2d 1064 (3d Cir. 1990) ......................................................31

*Branch Banking and Trust Co, of Virginia, Inc. v. Powers (In re Powers)*,
  227 B.R. 73 (Bankr. E.D. Va. 1998) ......................................19, 21

*Bush v. Balfour Beatty Bahamas (In re Bush)*,
  62 F.3d 1319 (11th Cir. 1995) ......................................................40

*Call Fed. Credit Union v. Sweeney (In re Sweeney)*,
  264 B.R. 866 (Bankr. W.D. Ky. 2001)........................................22

*Carillo v. Su (In re Su)*,
  290 F.3d 1140 (9th Cir. 2002) ..........................................14, 15, 23

*Catron v. Morrison (In re Catron)*,
  186 B.R. 197 (Bankr. E.D. Va. 1995) ........................................27

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (U.S. 1988) ............................................................32

iii

*First Nat'l Bank v. Stanley (In re Stanley)*,
66 F.3d 664 (4th Cir. 1995) .................................................................19, 20

*Healy v. Chelsea Resources Ltd.*,
947 F.2d 611 (2d Cr. 1991) .................................................................35

*In re Miller*,
156 F.3d 598 (5th Cir. 1998) ...............................................................15, 20

*Janssens v. Freedom Med., Inc.*,
2011 U.S. Dist. LEXIS 46670 (D. Md. Apr. 29, 2011)................................23

*Jones v. Pittsburgh Nat. Corp.*,
899 F.2d 1350 (3d 1990) ....................................................................32, 33

*K & K Ins. Group, Inc. v. Houston (In re Houston)*,
305 B.R. 111 (Bankr. M.D. Fla. 2003)........................................................17

*Kawaauhau v. Geiger*,
523 U.S. 57 (1998).................................................................................*passim*

*Lafarge North America, Inc. v. Poffenberger (In re Poffenberger)*,
471 B.R. 807 (Bankr. D. Md. 2012).............................................................14

*Mann Bracken, LLP v. Powers (In re Powers)*,
421 B.R. 326 (Bankr. W.D. Tex. 2009) ......................................................23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..............................................................................37

*Mercantile Peninsula Bank v. French (In re French)*,
499 F.3d 345 (4th Cir. 2007) ......................................................35, 36, 37, 38

*Parsons v. Parks (In re Parks)*,
91 F. App'x 817 (4th Cir. Dec. 19, 2003) .............................................15, 20

*Poffenberger*,
2012 Bankr. Lexis 1365 at *33 (Bankr. D. Md. Mar. 30, 2012)...................20

iv

*Power v. Robinson (In re Robinson)*,
    340 B.R. 316 (Bankr. E.D. Va. 2006) ...........................................................21

*Raspani v. Keaty (In re Keaty)*,
    397 F.3d 264 (5th Cir. 2005) .......................................................................27

*Reed v. Owens (In re Owens)*,
    449 B.R. 239 (Bankr. E.D. Va. 2011) .................................................... 20-21

*Rogal v. Am. Broad. Cos., Inc.*,
    74 F.3d 40 (3d Cir. 1996) ...........................................................32, 33, 34, 35

*Scott v. Metro. Health Corp. et al.*,
    No. 08-1934, 2013 U.S. App. LEXIS 16575,
    2013 WL 4007779 (6th Cir. Aug. 7, 2013) ...........................................11, 27

*Spring Works, Inc. v. Sarff (In re Sarff)*,
    242 B.R. 620 (B.A.P. 6th Cir. 2000) ............................................................16

*Staton Holdings, Inc. v. Mileski (In re Mileski)*,
    416 B.R. 210 (Bankr. W.D.N.C. 2009) .............................................16, 17, 18

*Swentek v. USAIR, Inc.*,
    830 F.2d 552 (4th Cir. 1987) .......................................................................27

*U.S. v. Diebold, Inc.*,
    369 U.S. 654 (1962).....................................................................................37

*Waste Conversion v. Sims*,
    868 F. Supp. 643 (D.N.J. 1994)...................................................................31

*Watts v. U.S.*,
    841 F.2d 275 (9th Cir. 1987) .......................................................................38

## STATUTES

11 U.S.C. § 523(a) .........................................................................................11

11 U.S.C. § 523(a)(6).............................................................................*passim*

11 U.S.C. § 727(a)(4)(A) ..................................................................................36

28 U.S.C. § 1920 ..............................................................................................8

31 U.S.C. § 3729 *et seq.*..................................................................................1

**RULES**

E.D.N.C. L. Civ. R. 7.1(i) ...............................................................................33

Fed. R. Civ. P. 56 ............................................................................................38

Fed. R. Civ. P. 56(e) ..................................................................................36, 37

Fed. R. Civ. P. 60(b) .............................................................................10-11, 27

W.D. Mich. L. Civ. R. 7.2(d) ..........................................................................33

W.D. Mich. L. Civ. R. 7.3(d) ..........................................................................33

**OTHER AUTHORITIES**

4 Collier on Bankruptcy § 423.12[5] (16th ed. 2012) .....................................14

Restatement (Second) of Judgments § 28(5) ....................................................40

## STATEMENT OF THE CASE

1.    *Overview of the Case*

Defendant Mary Theresa Scott ("Scott") seeks to discharge through her chapter 7 bankruptcy proceeding a debt owed to Plaintiffs Metropolitan Health Corporation ("MHC") and Michael Faas ("Faas" and collectively with MHC, "Metropolitan").  The debt arises from a judgment for sanctions that the United States District Court for the Western District of Michigan (the "Michigan U.S. District Court"), Judge Enslen presiding, entered against Scott for her litigation misconduct in the pursuit of frivolous, and costly, claims against Metropolitan for retaliation and wrongful termination.  [JA 511-533, 592-617.]  Scott's improper pursuit of such claims followed a *qui tam* action she commenced against Metropolitan and 19 other persons and entities under the False Claims Act (31 U.S.C. § 3729 *et seq.*) in the Michigan U.S. District Court in July 2002 (the "Michigan Action").  [JA 330-364.]

The United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") granted summary judgment in favor of Metropolitan in an adversary proceeding and determined that Scott's debt in the amount of $1,608,268.80 owed to Metropolitan pursuant to the sanctions opinions was non-dischargeable as a willful and malicious injury" under 11 U.S.C. § 523(a)(6).  [JA 185-194.]  The Bankruptcy Court denied Scott's motion to

1

reconsider its ruling. [JA 267-275.] The United States District Court for the Eastern District of North Carolina (the "NC U.S. District Court" and collectively with the Bankruptcy Court, the "Lower Courts") affirmed the Bankruptcy Court's decisions on appeal. [JA 35-63.]

Through this appeal, Scott seeks a reversal of the Lower Courts' determination that Scott is collaterally estopped from re-litigating the merits of the Michigan U.S. District Court's sanctions opinions, and is not permitted a trial on the merits before the Bankruptcy Court regarding her mindset while engaging in egregious litigation misconduct in the Michigan Action. [Scott Brief p. 4.] Scott's appeal is her tenth attempt before a sixth separate federal court to re-litigate the Michigan U.S. District Court's sanctions opinions.[1]

2.    *The Commencement and Consensual Resolution of the Qui Tam Action*

Scott was a Senior Vice President of MHC. She was in charge of MHC's for-profit businesses, and was responsible for physician recruitment, billing and coding services and negotiation of physician compensation. [JA 436-437.] Scott subsequently alleged that MHC's conduct in many of these areas that she oversaw was legally deficient. [JA 336-337; 350-352.] In April 2002, Scott notified the Board of Directors of MHC (the "MHC Board") that MHC (and many others) had

---

[1] *See infra* fn. 10 and corresponding text. Consistent with Scott's brief, references to docket entries in the Michigan Action for documents that do not appear in the Joint Appendix are denoted as "MI __".

2

submitted purportedly false claims to the government in the form of irregularities in billing and coding with respect to Medicare.  [JA 445-446.][2]  As a result, MHC retained a law firm in late April 2002 to investigate Scott's "false claims" allegations and another law firm to investigate her allegations of mistreatment, and it removed Faas as her supervisor.  [JA 447-448.]  On June 11, 2002, based on its internal investigation, MHC self-reported the alleged irregularities and the possibility that improper billing had occurred to the Office of the Inspector General, United States Department of Health and Human Services through the Provider Self-Disclosure Protocol.  [JA 368.]

In connection with its internal investigation of Scott's "false claims" allegations and her claims of retaliation, and to ensure its accuracy, MHC instituted certain "protocols" that Scott and Faas were required to follow.  Besides removing Faas as Scott's supervisor, the protocols provided, among other things, that Scott

---

[2] The Michigan U.S. District Court had serious doubts as to whether Scott actually undertook certain actions she claimed to have undertaken to alert Metropolitan. For instance, the Michigan U.S. District Court noted that Scott's allegations that she met with Faas in 2001 to discuss the billing irregularities were unlikely because they had never been previously disclosed in discovery, deposition testimony or prior court filings, which included Scott's deposition testimony in which she specifically stated that she had never had such a meeting.  [JA 459.] Scott's belated presentation of purported evidence during briefing that she had previously denied existed during her deposition testimony provides a window on her propensity for abusive conduct during litigation.  However, the disputed fact that she attempted to create – that is, whether she had reported billing irregularities to Faas in 2001 – was ultimately immaterial to the dismissal of her case as well as the basis for the sanctions levied against her.

and Faas were not to interfere with the investigation and were to strictly maintain the confidentiality of Scott's charges and of the investigation. [JA 447.] Scott consistently failed to comply with the protocols and routinely engaged in other improper activities. What became her most significant violation was that in April and May 2002 she altered minutes of a board meeting concerning physician compensation that occurred in February 2002, and she misappropriated and then concealed the tape recordings of that meeting. [JA 448-454.] Her subordinates also reported to Jeff Fraser, an outside attorney hired to investigate Scott's claims of mistreatment, that Scott was attempting to manipulate their interview testimony during his investigation. [JA 449.] After this information became known to Mr. Fraser and the attorneys investigating Scott's "false claims" allegations, they jointly advised the MHC Board. [JA 454.] The MHC Board thereafter placed Scott on paid administrative leave effective June 12, 2002. Less than a month later (July 2, 2002) Scott commenced the Michigan Action. [JA 454.][3]

After further investigation of Scott's allegations and conduct, the MHC Board terminated Scott effective at the end of January, 2003. [JA 455.] The

_____

[3] Scott was unhappy with her employment situation in the Fall of 2001, and was actively contemplating how to sue MHC in February 2002. Perhaps not by coincidence, it was only after her lawyer determined in February 2002 that the "seeds of a whistleblower approach" could serve as a basis for a lawsuit against MHC (rather than a theory based on gender discrimination) that Scott undertook efforts to notify MHC about the purported irregularities in billing and coding. [JA 444-446.]

Michigan U.S. District Court determined that the bases for MHC's termination of Scott's employment, which were held not to be pretextual, included the "falsification of evidence, concealment of evidence, insubordination as to Fraser, refusal to obey the protocol, inappropriate conduct as to management assessment, verbal abuse of colleagues, efforts to manipulate management assessments, disparaging fellow officers, and threatening to retaliate against staff to name a few reasons." [JA 468.][4]

On November 17, 2003, after a lengthy investigation that included MHC's cooperation, the United States intervened as to six of the claims in the *qui tam* portion of the Michigan Action. [JA 364-367.] Two weeks later, the United States and MHC entered into a settlement agreement whereby the United States agreed to dismiss all of the claims with prejudice in exchange for a structured payment of $6.25 million over three years. [JA 368-392.] No admission or finding of wrongful conduct on MHC's part was ever made. [JA 370.]

3.    *Scott Continues to Press Illegitimate Claim for Wrongful Termination and Commits Litigation Misconduct*

After the *qui tam* portion of the Michigan Action was dismissed with prejudice, Scott filed a revised second amended complaint on August 24, 2004

---

[4] In addition to investigating Scott's claims of mistreatment, Mr. Fraser was designated as the person to whom Scott was to report during the investigation after she had succeeded in having Faas removed as her immediate supervisor. [JA 446.]

through which she re-alleged her claims that Metropolitan had retaliated against her, and added that she had been wrongfully terminated by MHC from her employment. [JA 393-416.] In the course of discovery Scott was asked to produce all of the recordings of the corporate board meeting held in February 2002 concerning physician compensation. It was the minutes of this meeting that Scott was known to have altered. The tape recordings, which MHC believed Scott had taken and hidden during the investigation of her claims, would substantiate whether she had falsified the corporate minutes of such meeting, an act (together with hiding the tapes during the investigation) that clearly supported MHC Board's termination of her employment. [JA 519.] Scott, however, denied having anything more than a fragmentary portion of the recording, consistent with what she had claimed in the investigation in 2002; and in her sworn deposition testimony she again denied having any additional recordings of the corporate board meeting. [JA 520 (referencing an e-mail from Scott's counsel to Scott that mentioned "you were extensively deposed on whether there were other tapes and you [Scott] said there were not").] Yet, in connection with the parties' extensive briefing related to cross-motions for summary judgment regarding Scott's retaliation claims, Scott submitted a *complete* transcript of the February 2002 board meeting confirming that she in fact had possession of all of the tapes of that meeting and had been

hiding them all along.  [JA 515-516.][5]  Moreover, consistent with the position taken by MHC's Board in terminating Scott, the tapes and transcript contradicted the altered minutes that Scott had prepared of the meeting.  [JA 450-451; 454]  According to the Michigan U.S. District Court, "the transcript provides certain evidence, ***consistent with Scott's admissions***, that she made at least two very significant changes to the committee minutes which misrepresented what was said at the meeting and which, thereby, violated her protocol and her general corporate and officer duties."  [JA 454 (emphasis added).]  The Michigan U.S. District Court further noted that the tapes and transcripts provided irrefutable evidence that Scott had been hiding "an absolutely crucial piece of discovery . . . [the revelation of which] doomed her retaliation claim because the [now irrefutable] alteration of the board minutes was a non-retaliatory reason given for [Scott's] discharge . . . ."  [JA 512-513.]

In the September 2005 opinion, the Michigan U.S. District Court made extensive findings of fact regarding that Scott's litigation misconduct, including the improper concealment and non-disclosure of these recordings, along with her filing of false affidavits and her failure to disclose other tape recordings of covertly

---

[5] The Michigan U.S. District Court determined based on physical evidence available to it, including e-mails from Scott's attorney advising that Scott not disclose a particular tape and an affidavit from Scott stating that the lost tapes had been lost or recycled, that Scott "unlawfully retained the original three recordings . . . and determined not to disclose them."  [JA 516.]

recorded conversations.  The Michigan U.S. District Court found these activities constituted egregious litigation misconduct that warranted the imposition of significant sanctions.   The Michigan U.S. District Court reasoned that such misconduct allowed Scott to continue the prosecution of what she knew to be false and illegitimate claims against Metropolitan for retaliation and wrongful termination, all at significant cost to Metropolitan.  [JA 532.]  After determining that sanctions were warranted, the Michigan U.S. District Court determined the nature of the sanctions to be awarded though not the amount, and additionally awarded Metropolitan $18,966.40 in statutory costs pursuant to 28 U.S.C. § 1920. [JA 533.][6]

After making findings of fact in the September 2005 opinion regarding Scott's bad faith conduct during the course of the litigation and determining the general scope of the sanctions to be levied, the Michigan U.S. District Court invited the parties to brief the specific dollar amount of Scott's liability to Metropolitan based on the Metropolitans' attorneys' fees and expenses incurred in defending Scott's baseless suit.  [JA 533.]  After additional briefing, the Michigan U.S. District Court issued the December 2005 opinion in which it incorporated by

---

[6]  The Bankruptcy Court determined that the statutory costs awarded to Metropolitan ($18,966.40) were not excepted from discharge because the legal standard under which such award was made (28 U.S.C. § 1920) did not require any findings of bad faith.  [JA 190-191.]

reference the factual findings from its September 2005 opinion and assessed a sanction against Scott in the amount of $1,608,268.80 on account of such fees and expenses.  [JA 593, 616.]

The Michigan U.S. District Court, in imposing sanctions against Scott, relied on reams of affidavit and deposition testimony from Metropolitan and Scott as well as tape transcripts and minutes, the authenticity of which was never contested and a source of which was admitted to be Scott,[7] to make findings of fact bearing on Scott's credibility, honesty, intent and motive during the course of the litigation.[8] Based on this mountain of evidence, the Michigan U.S. District Court synthesized Scott's improper conduct throughout the litigation as "deny[ing] secret wrongdoing, until confronted with undeniable evidence of it.  In a word, she has not displayed any semblance of self-responsibility or remorse concerning either her

---

[7] The Michigan U.S. District Court determined that Scott "admitted facts which establish beyond any genuine issue of material fact that she wrongly altered corporate records and that she withheld from [MHC] tapes evidencing corporate minutes."  [JA 467.]

[8] The Michigan U.S. District Court routinely alludes to the voluminous amount of affidavit testimony and deposition testimony that it reviewed and relied upon during the course of the Michigan Action, and specifically cites to such testimony where appropriate.  [*See*, *e.g.*, JA 435 ("In connection with this briefing, the Court has received hundreds of pages of argument and thousands of pages of exhibits . . . .").]  To ease the burden on this Circuit Court in quantifying such submissions as it pertains to Scott and Metropolitan, the Joint Appendix includes a summary of the number and size of those submissions, which included 58 affidavits totaling 470 pages, and 48 depositions totaling 867 pages (uncondensed). [JA 23-34.]

wrongful workplace conduct or her wrongful litigation conduct which concealed her wrongful workplace conduct." [JA 594.][9]  In its September 2005 opinion, the Michigan U.S. District Court further implied that Scott had acted "vexatiously, wantonly, or for oppressive reasons." [JA 600 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975)).]

The Michigan U.S. District Court's determination of Scott's litigation misconduct in the September 2005 opinion, a finding based on a thorough review of a sizable record presented to it by both parties, has withstood repeated attempts from Scott to re-litigate in full the merits thereof.  Apart from her litigation before the Lower Courts, which are at issue in this appeal, Scott has unsuccessfully challenged the merits of the Michigan U.S. District Court's sanctions before each of: (i) the United States Court of Appeals for the Sixth Circuit, on appeal from the Michigan U.S. District Court; (ii) the United States Court of Appeals for the Sixth Circuit on motion for reconsideration and rehearing *en banc*; (iii) the United States Supreme Court, on petition for writ of certiorari; (iv) the Michigan U.S. District

---

[9] Just one example to support the Michigan U.S. District Court's conclusions about Scott's lack of credibility is as follows:  Prior to her inadvertent revelation of the full transcript of the recordings, Scott filed an affidavit in which she represented that her version of the corporate minutes was accurate and supported by the recordings [JA 513] and another where she reaffirmed that statement.  [JA 514]. After the revelation of the full transcript of the recordings, when she could no longer deny the truth, Scott admitted that she had (i) altered the minutes to delete a statement by Faas that was actually made and (ii) altered the minutes to add a statement from her that had never been made.  [JA 515-516.]

Court, Judge Yonker presiding, on a motion to vacate pursuant to Fed. R. Civ. P. 60(b); (v) the United States Court of Appeals for the Sixth Circuit, on appeal for denial of motion to vacate; and (vi) the United States Court of Appeals for the Sixth Circuit on motion for reconsideration and rehearing *en banc*.[10]

4.    *Scott's Debt to Metropolitan Held to be Non-dischargeable*

The Bankruptcy Court determined based on the entirety of the Michigan U.S. District Court's findings that: (i) Scott's debt in the amount of $1,608,268.80 owed to Metropolitan pursuant to the sanctions opinions was non-dischargeable pursuant to 11 U.S.C. § 523(a) because the Michigan U.S. District Court made particular findings of fact with respect thereto that satisfied the definition of "willful and malicious injury" under 11 U.S.C. § 523(a)(6); and (ii) the application of collateral estoppel prevented it from ruling otherwise.  [JA 190-194.]  By order dated June 6, 2011, the Bankruptcy Court denied Scott's amended motion to set aside the Bankruptcy Court's February 17, 2011 order.  [JA 267-275.]  The NC U.S. District Court reviewed *de novo* the Bankruptcy Court's conclusions of law, application of collateral estoppel and grant of summary judgment.  [JA 42.]  By order entered on August 13, 2013, the N.C. U.S. District Court determined, *inter*

---

[10] Corresponding citations are (i) JA 617-660, (ii) JA 667, (iii) JA 668; (iv) MI 785, (v) *Scott v. Metro. Health Corp. et al.*, No. 08-1934, 2013 U.S. App. LEXIS 16575, 2013 WL 4007779 (6th Cir. Aug. 7, 2013) and (vi) *Scott v. Metro. Health Corp.*, *et al.*, No. 08-1934 (6th Cir. Sep. 25, 2013).

*alia*, that "both the Michigan [U.S.] District Court and the Bankruptcy Court had ample evidence of Scott's intentional litigation misconduct" and affirmed the Bankruptcy Court's decisions.  [JA 35, 59.]

## SUMMARY OF ARGUMENT

While the Bankruptcy Code exists to provide the proverbial "fresh start" to those that file for its protection, it also specifically excludes a fresh start for certain types of debts arising out of enumerated bad acts.  One of those types of debts is precisely the type of debt that Scott incurred to Metropolitan through her egregious litigation misconduct.  The Michigan U.S. District Court found that Scott: (i) knew why she was being terminated from her employment with MHC because she had engaged in the improper conduct that Metropolitan alleged had taken place (the alteration of the minutes of a board meeting in a manner not supported by the recordings); (ii) proceeded to file a baseless suit against Metropolitan alleging wrongful termination in spite of her knowledge of her own misconduct; (iii) lied to investigators about the whereabouts of the recordings that evidenced her misconduct; (iv) improperly represented to the Michigan U.S. District Court the accuracy of the altered minutes; and (v) inappropriately hid the recordings.  These findings were based substantially – ***entirely*** in the case of the misconduct associated with the misappropriation and hiding of the tapes, the falsification of the minutes and the falsification of Scott's testimony regarding the Board meeting –

12

upon physical evidence ***produced by*** Scott and upon Scott's own admissions. Given the conclusive nature of these facts revealed to the Michigan U.S. District Court through voluminous physical evidence (including evidence submitted by Scott in the form of admissions), the Lower Courts properly gave collateral estoppel effect to the Michigan U.S. District Court's determination that Scott had inflicted a willful and malicious injury against Metropolitan through her intentional litigation misconduct. Since the documented evidence amply establishes Scott's bad faith, a hearing was not, and is not, necessary since no amount of live testimony could refute it and since witness credibility was irrelevant in determining the weight to be given to Scott's own evidence and admissions. For the reasons stated below, this Circuit Court should affirm the Lower Courts' correct orders granting collateral estoppel effect to the Michigan U.S. District Court's sanctions opinions and deny Scott her request to re-open a debate she thoroughly participated in and lost over eight years ago.

## ARGUMENT

### I.    THE LOWER COURTS WERE CORRECT TO APPLY COLLATERAL ESTOPPEL TO THE MICHIGAN SANCTIONS OPINIONS

#### A.    The Issue of Willfulness was Identical to the Issue Determined by the Michigan U.S. District Court

The Supreme Court of the United States defined the scope of what constitutes a "willful and malicious injury" under 11 U.S.C. § 523(a)(6) in

*Kawaauhau v. Geiger*, 523 U.S. 57 (1998). Specifically, a "willful" injury is a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61 (emphasis in original). In defining the scope of "willful," the Supreme Court adopted the United States Court of Appeals for the Eighth Circuit's reasoning that § 523(a)(6) is intended to reflect intentional torts as opposed to negligent or reckless torts. *Id.* at 61-62.

The Supreme Court's decision in *Geiger*, however, did not focus on the state of mind necessary to meet the "willfulness" requirement of § 523(a)(6). *See*, *e.g.*, 4 Collier on Bankruptcy § 423.12[5] at 523-95 (16th ed. 2012). As a result, there has been considerable judicial debate regarding whether "a debtor must have specifically intended the injury or whether the commission of an intentional tort that is substantially certain to result in injury is sufficient to satisfy the willfulness requirement." *Lafarge North America*, *Inc. v. Poffenberger (In re Poffenberger)*, 471 B.R. 807, 822 (Bankr. D. Md. 2012) (internal quotations and citations omitted). The debate has split the judiciary into two camps. The first camp follows the "subjective approach" where a debt is non-dischargeable under § 523(a)(6) "only if the debtor intended to cause harm or knew that harm was a substantially certain consequence of his or her behavior." *See*, *e.g.*, *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1143 (9th Cir. 2002). The other camp follows the "objective approach" where a debt is non-dischargeable under § 523(a)(6) "either

14

if there is subjective intent to cause an injury or if there is an objective substantial certainty of harm." *Id.* at 1143-1144 (citing *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998)).   As discussed in more detail below, this Circuit Court has not expressed a position in a published decision, but in an unpublished decision it cited with approval the United States Court of Appeals for the Fifth Circuit's objective approach in *Miller. See Parsons v. Parks (In re Parks)*, 91 F. App'x 817, 819 (4th Cir. Dec. 19, 2003) (quoting *Miller*, 156 F.3d at 603).

Scott's assertion that the Bankruptcy Court erroneously applied an objective standard in determining that the Michigan U.S. District Court's findings were "identical" to the issue of willful injury under § 523(a)(6), and that the NC U.S. District Court erroneously affirmed the same, is unfounded for three alternative reasons: (1) an injury resulting from litigation misconduct is *per se* a willful and malicious injury under § 523(a)(6) thereby rendering an analysis of *scienter* unnecessary in such circumstances; (2) assuming the court must examine *scienter* in the context of litigation misconduct, the Bankruptcy Court undertook the proper analysis required by this Circuit Court when it applied the "objective approach" articulated in *Miller*; and (3) assuming *scienter* must be examined using the "subjective approach," the Bankruptcy Court's determination that the Michigan U.S. District Court's findings of fact constitute "badges of intent" is sufficient under such an approach given the facts of this case.

*1.     Litigation Misconduct is Per Se a Willful and Malicious Injury*

Scott's argument that the Lower Courts erred in finding that the Michigan U.S. District Court's findings were "identical" to the issue of willful injury under § 523(a)(6) is focused on an unnecessary detail – *scienter*. Such a focus is superfluous because the injury resulting from Scott's type of litigation misconduct in the Michigan Action is *per se* a "willful and malicious injury" under § 523(a)(6) that is not excepted from discharge. *Staton Holdings*, *Inc. v. Mileski (In re Mileski)*, 416 B.R. 210, 223 (Bankr. W.D.N.C. 2009) ("[A]s a matter of bankruptcy law . . . a defendant who falsifies records produced in discovery in an attempt to deceive his opponent and the . . . court is guilty of a willful and malicious injury . . . that is unquestionably nondischargeable."); *see also Spring Works*, *Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 624-29 (B.A.P. 6th Cir. 2000) (finding that the bankruptcy court was bound by prior findings that the debtor intentionally redacted his bank records during discovery in an attempt to deceive his creditor and that such findings supported a determination that the sanctions award resulted therefrom was non-dischargeable under § 523(a)(6)).

In *Mileski*, a state court imposed sanctions against the debtor because he had "personally created, or directed the creation of a false document, which he represented to be a valid agreement between the parties, presented this false document through the course of discovery as a valid document, and relied upon

such document to create a non-meritorious defense to plaintiff's claims." *Mileski*, 416 B.R. at 215-16.  The United States Bankruptcy Court for the Western District of North Carolina – after applying state law concepts of collateral estoppel – determined that the state court judge's award of attorneys' fees was "clearly intended to compensate Staton for costs incurred ferreting out Mileski's fabrication and responding to the false discovery" and, as a result, held that the award of sanctions was not dischargeable.  *Id.* at 223.  Notably, the bankruptcy court found that the prior state court's ruling regarding litigation misconduct deemed such action ***as a matter of bankruptcy law*** to be non-dischargeable under § 523(a)(6), and did not delve into a discussion of whether an objective or subjective approach to determining the debtor's intent was more appropriate.  *See id.*[11]

Scott's actions in the course of the Michigan Litigation are more egregious than the actions of the debtor in *Mileski*.  Among other bad acts, Scott intentionally failed to disclose recordings that contained evidence material to a determination of the claims ***she asserted*** against Metropolitan in the Michigan Action – specifically, her fabrication of false corporate minutes – and filed intentionally false summary

---

[11] Similarly, in *K & K Ins. Group*, *Inc. v. Houston (In re Houston)*, 305 B.R. 111, 118 (Bankr. M.D. Fla. 2003), the United States Bankruptcy Court for the Middle District of Florida did not delve into the *scienter* of the debtor as to willfulness under § 523(a)(6) in determining that "the issue raised and decided in the state court action (the intentional misrepresentations made by the Debtor in fraudulently prosecuting the case) is identical to the issue in the dischargeability action (the Debtor's false representations, actual fraud, or malicious prosecution of the case)."

judgment affidavits that omitted significant information known to her.  [JA 522.]
As a result, similar to the state court's imposition of sanctions in *Mileski*, the
Michigan U.S. District Court imposed sanctions against Scott to compensate
Metropolitan for the significant cost and expense incurred in "flush[ing] out the
truth from Scott."  [JA 594.]   Not only did the Michigan U.S. District Court
determine that Scott's improper actions include discovery malfeasance, but going
further than the court in *Mileski* it held that Scott's **entire case** against
Metropolitan for alleged wrongful termination was "legally baseless" and
"motivated by an 'improper purpose' to harass and extort" Metropolitan.  [JA 532,
602.]   In other words, Scott affirmatively prosecuted a case that she knew was
baseless and then manipulated evidence in furtherance of her unjust cause.  Scott's
actions in the Michigan Action were more egregious as the actions of the debtor in
*Mileski*, whose actions were deemed to be *per se* a willful and malicious injury.
Accordingly, Scott's debt to Metropolitan arising under the sanctions opinions is
also non-dischargeable pursuant to § 523(a)(6).

> 2.     *If an Analysis of Scienter is Necessary, Then the Lower Courts'
>        Analysis was Proper as the Fourth Circuit Approves of the Use
>        of the "Objective Approach"*

Assuming, without conceding, that the Bankruptcy Court was required to
specifically delve into Scott's *scienter* in its review of the Michigan U.S. District
Court's findings of fact regarding Scott's litigation misconduct, then its use of the

"objective approach" was appropriate under applicable Fourth Circuit law.  Scott asserts that the Bankruptcy Court was required to apply the "subjective" approach to the issue of whether there was a willful injury.  Her argument is based on this Circuit Court's decision in *First Nat'l Bank v. Stanley (In re Stanley)*, 66 F.3d 664 (4th Cir. 1995), a decision that predates *Geiger* and addresses a different issue under § 523(a)(6).  [Scott Brief p. 24.]

This Circuit Court in *Stanley* was primarily focused on whether the *act*, not the *injury*, was "deliberate" or "intentional."  *Stanley*, 66 F.3d at 668.  Having been decided three years before *Geiger*, *Stanley* is consistent with pre-*Geiger* law.  *See Branch Banking and Trust Co*, *of Virginia*, *Inc. v. Powers (In re Powers)*, 227 B.R. 73, 75 (Bankr. E.D. Va. 1998) ("In proving intent prior to *Geiger*, the creditor was only required to show the debtor's act was intentional; there was no requirement to show that the injury was intended.")  (internal citation omitted).  *Geiger*, however, changed the focus from the act to the injury.  *Geiger*, 523 U.S. at 61.  As a result, *Stanley* is precedential with respect to an issue (whether the act was intentional) that is no longer the focus of the analysis under § 523(a)(6) post-*Geiger* (whether the injury was intentional).  *Stanley* is therefore not instructive on the issue *Geiger*

left unresolved – the *scienter* that the debtor must have with respect to the injury

suffered by his creditor.[12]

Since *Geiger*, this Circuit Court has not addressed in a published decision

the test that lower courts in its jurisdiction must apply to determine the debtor's

*scienter* as to the injury suffered by his creditor for purposes of § 523(a)(6).

However, in 2003, in an unpublished decision, this Circuit Court articulated such

test as whether the debtor acted with "substantial certainty [that] harm [would

result] or a subjective motive to cause harm." *Parks*, 91 F. App'x at 819 (quoting

*Miller*, 156 F.3d at 603) (alteration in original).  In articulating its test, this Circuit

Court quoted approvingly the United States Court of Appeals for the Fifth Circuit's

decision in *Miller*, which established that circuit's use of the "objective approach."

*Id.*  As a result, lower courts in the Fourth Circuit have interpreted this to mean that

this Circuit Court adopted the "objective approach" used in *Miller* where the

"objective substantial certainty" or "subjective motive" test is used to satisfy the

willfulness requirement.  *See Poffenberger*, 2012 Bankr. Lexis 1365 at *33 (Bankr.

D. Md. March 30, 2012); *Reed v. Owens (In re Owens)*, 449 B.R. 239, 254 (Bankr.

---

[12] To highlight the distinction, the subjective analysis in *Stanley* would apply to,
among other things, whether Scott deliberately or intentionally withheld recordings
and undertook the other acts described as litigation misconduct.  There is no doubt
she did.  [*See*, *e.g.*, JA 516.]  The analysis in *Stanley* would not, however, extend to
whether the injuries the Appellees suffered as a result of these intentional acts (the
incursion of fees and expenses) were also intentional.

E.D. Va. 2011) ("The Eastern District of Virginia adheres to the 'objective substantial certainty' or 'subjective motive' test to satisfy the willfulness requirement.").[13]    Therefore, the Bankruptcy Court's use of the "objective approach" in determining whether Scott intended to willfully cause Metropolitan injury is consistent with applicable law in the Fourth Circuit and was not erroneous.

> 3.    *If the "Subjective Approach" is Required, Then the Bankruptcy Court's Determination is Sufficient Given the Facts of this Case*

Assuming, without conceding, that the Bankruptcy Court was required to specifically delve into Scott's *scienter* using a "subjective approach," then its reliance on the Michigan U.S. District Court's findings is appropriate under such an approach given the facts of this case.  It is rare that a debtor will affirmatively admit to engaging in bad acts, or in having an improper motive, during the course of litigation.  Accordingly, courts are often tasked with making a determination regarding a debtor's intent based on circumstantial evidence.  *See*, *e.g.*, *Power v. Robinson (In re Robinson)*, 340 B.R. 316, 337 (Bankr. E.D. Va. 2006) ("[S]ince a debtor in a § 523(a)(6) case is unlikely to admit that he or she intended to cause

---

[13] Scott also relies on the United States Bankruptcy Court for the Eastern District of Virginia's 1998 decision in *BB&T v. Powers* for her argument that the Bankruptcy Court should have applied the "subjective approach."  [Scott Brief p. 23.]  Given that the Eastern District of Virginia has determined since *BB&T v. Powers* that the courts in the Fourth Circuit should apply the "objective approach," Scott's reliance on that case is misplaced.

injury, or that he or she was substantially certain that injury would result, this state of mind can be established through circumstantial evidence.") (quoting *Call Fed. Credit Union v. Sweeney (In re Sweeney)*, 264 B.R. 866, 872 (Bankr. W.D. Ky. 2001)).  Scott has not admitted to litigation misconduct during the course of the Michigan Action, though the Michigan U.S. District Court's findings of what she did are based substantially upon physical evidence and testimony that she submitted.  Thus, in the absence of an admission, the Bankruptcy Court properly determined that the Michigan U.S. District Court's findings of fact on the issue of intent, which were based on a plethora of circumstantial evidence regarding her intent, directly addressed the issue of willful injury.

Scott's litigation misconduct in the Michigan Action was documented at length by the Michigan U.S. District Court.  Although the Bankruptcy Court did not explicitly reference each of the Michigan U.S. District Court's findings in its opinion, it made a determination regarding the non-dischargeability of the debt arising under the sanctions opinions based on the ***entirety*** of those findings.  [JA 189.]  Rather than recite the Michigan U.S. District Court's numerous findings verbatim, the Bankruptcy Court truncated them into three findings for purposes of discussing the willfulness prong of § 523(a)(6).  Those were the Michigan U.S. District Court's findings that Scott: (i) pressed an illegitimate claim that she knew

to be false; (ii) denied wrongdoing until confronted with undeniable evidence of it; and (iii) concealed recordings and intentionally filed false affidavits. [JA 191.]

The Bankruptcy Court held that those findings amounted to "badges of intent," which Scott presumptively (and incorrectly) equates to an "objective analysis" merely because the Bankruptcy Court cited to the United States Bankruptcy Court for the Western District of Texas' decision in *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326 (Bankr. W.D. Tex. 2009). [Scott Brief pp. 25-26.] In this context, however, the use of "badges of intent" is equivalent to a determination of subjective intent based on overwhelming circumstantial evidence because "[a] debtor may be assumed to intend the natural consequence of his acts." *Janssens v. Freedom Med., Inc.*, 2011 U.S. Dist. LEXIS 46670, at *15-16 (D. Md. Apr. 29, 2011). At least one circuit that follows the "subjective approach" – the Ninth Circuit – has recognized that even that approach allows an objective analysis to determine what the debtor actually knew at the time he took the injury-producing action because of a debtor's unlikeliness to testify of his intent to cause injury to another. *See Carillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002).

In this case, the Michigan U.S. District Court examined the extensive evidence before it and determined that Scott had intentionally engaged in litigation misconduct. The natural, direct and, frankly, obvious consequences of those

actions being that Metropolitan was required to incur significant costs and expend over a million dollars in legal fees to defend a baseless suit. [JA 532.] Therefore, by intentionally engaging in litigation misconduct Scott necessarily intended to inflict an injury against Metropolitan. Given that the Michigan U.S. District Court's "opinion provide[s] ample findings of fact related to Scott's subjective intent to cause injury" [JA 50] and Scott's unlikeliness to testify to that intent, the NC U.S. District Court correctly determined that the Bankruptcy Court's use of a potentially incorrect standard is, at most, harmless error. [JA 49.]

*Geiger* would support this conclusion since it pruned the scope of what constitutes a "willful and malicious injury" under § 523(a)(6) to ensure that the actor intended the ultimate consequence of an action. *Geiger*, 523 U.S. at 61-62. The example the United States Supreme Court used to emphasize its conclusion (a left-hand turn without checking for oncoming traffic) is instructive given the myriad of possibilities resulting from such action. For instance, one could make the turn and hit a slew of cars, or one could make the turn and find open road. Thus, where there are numerous possibilities that could result from an action, the United States Supreme Court determined that it would be improper to impute the intent to act with the intent to injure. However, in the context of the litigation misconduct of the type at issue here (i.e., discovery misconduct and the prosecution of a baseless claim) there is only one possible consequence: injury to

24

the victim, even though the extent of that injury could range from the incursion of significant expense to determine the truth or an unfair loss in litigation if the truth is not discovered. Therefore, it is entirely appropriate for a court to conclude under the framework of *Geiger* that the type of litigation misconduct Scott engaged in is undertaken with the intent to injure the opposing party.

In addition, the Michigan U.S. District Court's findings of fact that Scott pressed an illegitimate claim that she knew to be false, which the Bankruptcy Court specifically cited in its decision [JA 191], lends significant weight to the Bankruptcy Court's decision being sufficient for purposes of the "subjective approach" if one were required. That is because "the findings that Scott pursued a factually baseless lawsuit in an effort to 'extort' money from her former employer is tantamount to a finding that Scott acted with the subjective intent to injure Metropolitan" by engaging in the malicious prosecution of a claim against Metropolitan. [JA 50.] It having been determined that Scott maliciously prosecuted a baseless claim, it is inconceivable how she can maintain that the resulting injury to Metropolitan – the costs associated with defending such a suit – was not intentional. *See*, *e.g.*, *Abbo v. Rossi, McCreery & Assocs. Inc. (In re Abbo)*, 168 F.3d 930, 931 (6th Cir. 1999) ("[W]e cannot conceive of a malicious prosecution where the resulting injury was not intentional.").

For the reasons stated above, the Lower Courts acted appropriately in determining that the Michigan U.S. District Court's findings of fact were identical on the issue of willfulness regardless of whether this Circuit Court requires the analysis be undertaken under a subjective or an objective approach.

### B.    The Issue of Willfulness was Actually Litigated

The Michigan U.S. District Court made its findings of fact regarding the extent of Scott's litigation misconduct in the September 2005 opinion. [*See, e.g.*, JA 532.] In doing so, and in making determinations as to Scott's credibility, honesty, intent and motive, it relied on numerous, and voluminous, affidavits and deposition transcripts submitted by Scott and Metropolitan. [*See, e.g., supra* at fn. 6.] In the December 2005 opinion, the Michigan U.S. District Court incorporated its findings of fact from the September 2005 opinion regarding Scott's litigation misconduct and provided a summary thereof. [JA 592-594.] The primary focus of the December 2005 opinion was the amount of the attorneys' fees and expenses Metropolitan incurred as a result of Scott's litigation misconduct. [JA 595-616.] The Michigan U.S. District Court did not conduct a hearing in connection with its entry of the sanctions opinions, which Scott stresses is fatal to the Bankruptcy Court's use of collateral estoppel. Specifically, she asserts that without such a hearing the issue of willfulness was not actually litigated before the Michigan U.S.

District Court. [Scott Brief at 34-35.] The use of collateral estoppel in this matter is, however, entirely appropriate even absent an evidentiary hearing or trial.[14]

For an issue to be "actually litigated" it must be contested by the parties, submitted for determination and actually determined by the trier of fact. *Swentek v. USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987) ("Collateral estoppel is appropriate where the identical issue was 'actually litigated,' that is, contested by the parties and submitted for determination by the court."). This requirement does not, however, demand that an evidentiary hearing or trial be held. *See, e.g., Raspani v. Keaty (In re Keaty)*, 397 F.3d 264, 271 (5th Cir. 2005) ("[A]t the federal level, there is no requirement of a trial or evidentiary hearing to conclude that an issue has been 'actually litigated.'"); *Catron v. Morrison (In re Catron)*, 186 B.R. 197, 202 (Bankr. E.D. Va. 1995) ("A full evidentiary hearing is not necessarily a prerequisite for an issue to be 'actually litigated.'"). In light of the

---

[14] A discussion regarding whether Scott was afforded a "full and fair opportunity" for a hearing follows the discussion in this section. As the matters are somewhat intertwined, it is appropriate to note for purposes of the discussion in this section that Scott actually litigated the issue of her litigation misconduct to the fullest extent that she requested. Indeed, Scott has repeatedly asserted before other federal courts that that she was denied a full and fair opportunity to be heard, and in each instance her claim has been rejected. *See, e.g., Scott v. Metro. Health Corp. et al.*, No. 08-1934, 2013 U.S. App. LEXIS 16575, 2013 WL 4007779 (6th Cir. Aug. 7, 2013) (affirming the Michigan U.S. District Court's denial of Scott's Rule 60(b) motion and noting that Scott argued that "the absence of a hearing violated due process").

extensive record before the Michigan U.S. District Court,[15] the participation of both Scott and Metropolitan in briefing the issue and the language in the sanctions opinions specifically addressing it, the issue of willfulness was actually litigated. The fact that a hearing was not held does not mean the issue of Scott's bad faith was not contested by the parties and submitted for determination by an applicable court.

### C. Scott was Given a Full and Fair Opportunity to Litigate the Issue of Bad Faith

#### 1. *Scott's Failure to Request an Evidentiary Hearing on the Issue of Her Bad Faith Precludes her from Raising the Lack of a Hearing as Grounds to Deny the use of Collateral Estoppel*

Scott asserts as a basis for denying the use of collateral estoppel that she was denied due process because the Michigan U.S. District Court did not hold a hearing on the issue of litigation misconduct before imposing sanctions against her.  [Scott Brief pp. 31-33.]  Had Scott properly requested a hearing on this issue, then the Michigan U.S. District Court's denial of such a hearing could possibly be a basis for this Court to determine that the Bankruptcy Court's application of collateral estoppel in this matter was in error.  *See*, *e.g.*, *Blonder-Tongue Labs*, *Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971) (stating that a finding that "**without fault of his own** the [party] was deprived of crucial evidence or witnesses in the first

---

[15] The record included 58 affidavits totaling 470 pages, and 48 depositions totaling 867 pages (uncondensed).  [JA 23-34.]

litigation" weighs against the application of collateral estoppel) (emphasis added). In this instance, however, Scott **did not request a hearing** regarding the issue of litigation misconduct even though she extensively participated in litigation (through briefing) prior to the Michigan U.S. District Court's determination on this very issue. As a result, the Michigan U.S. District Court's refusal to grant a hearing on the issue of litigation misconduct arises through Scott's fault because she did not ask for one.

The issue of Scott's litigation misconduct was directly addressed in the September 2005 sanctions opinion. Both Scott and Metropolitan "fully briefed the pertinent issues" addressed by that opinion, which included Scott's litigation misconduct. [JA 511.] In connection with her briefing, Scott filed (i) a 199 page response (inclusive of extensive exhibits) to Metropolitan's brief in support of their motion for sanctions [MI 588], (ii) a five page sur-reply to Metropolitan's brief in support of their motion for sanctions [MI 598], (iii) a 249 page amended response (inclusive of extensive exhibits) to Metropolitan's brief in support of their motion for sanctions [MI 599] and (iv) a 59 page brief (inclusive of five exhibits) in support of motion for reconsideration of the September 2005 sanctions opinion [MI 608]. None of the filings described in (i) through (iii) above included a request for a hearing on the issue of litigation misconduct.

29

Scott's motion for reconsideration filed in connection with item (iv) of the preceding paragraph did, however, expressly request an evidentiary hearing. [JA 230 ("Further, the [Michigan U.S. District] Court should order an evidentiary hearing to ascertain the circumstances relative to the matters addressed in the attached brief.") (quoting MI 678).][16] While Scott's motion for reconsideration was pending before the Michigan U.S. District Court, Scott filed a motion to unilaterally withdraw her motion for reconsideration. [JA 230 (citing MI 634).] In doing so, she also unilaterally withdrew with it her only request to the Michigan U.S. District Court for an evidentiary hearing regarding her litigation misconduct.[17]

---

[16] The focus of Scott's motion and requested hearing was Metropolitan's purported submission of fabricated evidence that had ostensibly misled the Michigan U.S. District Court concerning Scott's litigation misconduct. [JA 230 (citing MI 608).] Thereafter, Scott's attorneys conducted more due diligence and determined that the evidence the Appellees submitted was not fabricated, ***but had actually come from Scott and their office***. [JA 230 (citing MI 634).]

[17] As the Michigan U.S. District Court addressed Scott's litigation misconduct in the September 2005 sanctions opinion, the December 2005 opinion addressed the only remaining question: the amount of the sanction the Michigan U.S. District Court would impose. [JA 533.] To address the amount of sanctions, Scott filed (i) a 75 page response (inclusive of nine exhibits) to the Appellees' brief in support of their motion for sanctions [MI 647] and (ii) a 14 page sur-reply (with two exhibits) to the Appellees' brief in support of their motion for sanctions [MI 657]. In her 75-page response, Scott did properly request oral argument regarding the issue of the specific amount of attorneys' fees and costs to be imposed as a sanction. Clearly, Scott knew how to request an oral argument when she desired one, and that is highly indicative that Scott did not desire a hearing on the issue of litigation misconduct when she had an opportunity to obtain one.

Having not requested a hearing before the Michigan U.S. District Court regarding the issue of litigation misconduct, Scott **affirmatively waived her right to any such hearing** as well as any right to assert that the lack of a hearing deprived her of due process. Accordingly, Scott cannot now contend that she was denied due process "without fault of her own" such that collateral estoppel should not be applied. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1074 fn. 5 (3d Cir. 1990) (finding that the litigant's "failure to avail himself of available procedures does not constitute a sign of their inadequacy"). "Absent a showing that resort to available procedures would be futile, [Scott's] due process rights are not violated when [s]he fails to avail [her]self of known procedures." *Waste Conversion v. Sims*, 868 F. Supp. 643, 652 (D.N.J. 1994) (holding that plaintiff waived his right to a hearing by failing to request a hearing after adequate notice).

Scott also subtly argues that, even if she had obtained a hearing with respect to the imposition of sanctions, she would have nevertheless been denied due process of law because the Michigan U.S. District Court (specifically, Judge Enslen) was biased against her. In essence, Scott is trying to fit within the confines of the carve-out for futility noted in *Sims* and related decisions. The United States Court of Appeals for the Sixth Circuit directly addressed this issue and determined that any claim of bias on Judge Enslen's part is baseless. [RA 7-1 at 39] ("We conclude that a 'reasonable, objective person, knowing all of the circumstances'

31

would ***not*** have questioned [Judge Enslen's] impartiality based on the substance or tone of his opinions or in-court statements.") (emphasis in original).  As the United States Court of Appeals for the Sixth Circuit has already directly addressed Scott's argument regarding a fair and impartial tribunal, that court's decision against Scott on this issue is the law of the case.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816 (U.S. 1988) ("[T]he doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.  This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.") (internal citations and quotations omitted; alteration in original).

2.      *The Michigan U.S. District Court's Decision to Not Hold a Hearing Before Sanctioning Scott Does Not Violate Scott's Right to Due Process*

Scott relies on *Rogal v. Am. Broad. Cos., Inc.*, 74 F.3d 40 (3d Cir. 1996) to support her argument that the Michigan U.S. District Court's failure to hold a hearing on sanctions is a violation of Scott's right to due process.  [Scott Brief pp. 34-35.]  Although Scott presents the decision in *Rogal* as articulating an all-encompassing and inflexible standard, the United States Court of Appeals for the Third Circuit explicitly cautioned in that decision against doing so.  *Rogal* at 44 ("[T]he circumstances must dictate what is required.") (quoting *Jones v. Pittsburgh*

*Nat. Corp.*, 899 F.2d 1350, 1358 (3d 1990)).   Moreover, the appellate court specifically noted that a district court "in the sound exercise of its discretion must identify and determine the legal basis for each sanction charge sought to be imposed, and ***whether its further resolution requires further proceedings, including the need for an evidentiary hearing***."   *Id.* (quoting *Jones*, 899 F.2d at 1359) (emphasis added).[18]   Having made a narrow holding that depended heavily on the "particular facts and circumstances of the case before" it, the court in *Rogal* noted that where there are distinguishing factual circumstances its holding should not be followed.   *Id.* at 44-45.   The facts in *Rogal* are clearly distinguishable from the facts in this matter for two significant reasons.   The first is that, unlike Scott, the litigant in *Rogal* had expressly requested an evidentiary hearing to discuss whether his trial testimony was provided in bad faith.   *Id.* at 43.   The second reason

---

[18] The Michigan U.S. District Court exercised this very discretion when, consistent with its local rules, it decided to not grant oral argument in the face of Scott's failure to request it.   The Local Civil Rules of the Michigan U.S. District Court provided during the Michigan Action, and continue to provide, that "[a]ny party desiring oral argument ***shall include a request*** for oral argument in the caption and the heading of the party's brief."   W.D. Mich. L. Civ. R. 7.2(d) (concerning dispositive motions); W.D. Mich. L. Civ. R. 7.3(d) (concerning non-dispositive motions) (emphasis added).   The Local Civil Rules of the Michigan U.S. District Court are similar to those of the NC U.S. District Court in that they allow for disposition of the motion without need for oral argument.   *Compare* W.D. Mich. L. Civ. R. 7.2(d) ("In its discretion, the Court may schedule oral argument or dispose of the motion without argument at the end of the briefing schedule."), *with* E.D.N.C. L. Civ. R. 7.1(i) ("Hearings on motions may be ordered by the court in its discretion.   Unless so ordered, motions shall be determined without a hearing.")

33

is that the litigant in *Rogal* was deprived of an opportunity to potentially provide an explanation for contradictions in testimony, which presumably he would have been incentivized to do. *Id.* at 44. Scott was not so deprived. In fact, she had every opportunity during the course of the Michigan Action to reveal that she had tapes confirming her improper alteration of corporate minutes, but chose not to take advantage of that opportunity. Instead, Scott prosecuted a wrongful termination action against Metropolitan for several years that she knew was baseless because the falsification of those corporate minutes was a legitimate reason for MHC to terminate her employment "and one of the most significant reasons given by the attorneys who recommended her termination to the Board of Directors [of MHC]." [JA 593.] Her motivation was the harassment and extortion of Metropolitan [JA 602], something that she couldn't do if the facts known only to her were revealed in the light of day. Unfortunately for Scott, her inadvertent revelation of transcripts of the full recordings of the board meeting shed light on her misconduct to Metropolitan and the Michigan U.S. District Court. [JA 514.] With that revelation and Scott's admission of facts "establish[ing] beyond any genuine issue of material fact that she wrongly altered corporate records and . . . withheld from [MHC] tapes evidencing corporate minutes" [JA 467], the Michigan U.S. District Court had a factual basis to grant summary judgment against her on the wrongful termination claim in the Michigan Action. [JA 466-468.] The

34

Michigan U.S. District Court did not need to give Scott an opportunity to explain her impropriety after it was discovered, for it was clear that she undertook it for no other reason than to win on a meritless claim. Therefore, following the cautionary language from *Rogal* that such holding be narrowly construed, these significant differences in facts means that the lack of a hearing before the Michigan U.S. District Court is not a violation of Scott's due process rights.[19]

> 3.    *The Michigan U.S. District Court Was Not Required to Conduct a Full Evidentiary Hearing Before Sanctioning Scott*

Scott relies on *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345 (4th Cir. 2007) for the proposition that courts in the Fourth Circuit are not empowered to make determinations of credibility in a summary judgment context. Based on that proposition, Scott argues that the Bankruptcy Court erred when it relied on the Michigan U.S. District Court's findings since they were made on

---

[19] Scott also cites to *Healy v. Chelsea Resources Ltd.*, 947 F.2d 611 (2d Cr. 1991) for the proposition that a hearing should be conducted to determine credibility. [Scott Brief p. 35.] That case is also distinguishable because, among other reasons, the trial court did not give the defendant "a proper opportunity to oppose the motion for sanctions and to augment the record with appropriate countervailing evidence." *Healy*, 947 F.2d at 622. Even ignoring the fact that it was evidence Scott herself submitted that justified the sanctions against her, Scott had such an opportunity and did significantly augment the record. [*See*, *e.g.*, JA 23-34.]

summary disposition. [Scott Brief 37-39.][20] Given the facts underpinning this Circuit Court's decision in *French*, Scott reads too broadly into the court's language in that decision.

In *French*, the bankruptcy court awarded summary judgment to the creditor on the issue of non-dischargeability of its debt under § 727(a)(4)(A). *French*, 499 F.3d at 350. In ruling on summary judgment, the bankruptcy court rejected the debtor's affidavit and the affidavit of a proposed medical expert supportive of the debtor's position, both of which were ***uncontested*** and gave rise to genuine issues of material fact. *Id.* at 353-354. This Circuit Court determined that the bankruptcy court's ***unsupported rejection of uncontested testimony*** that raised genuine issues of material fact was not appropriate in the summary judgment context. *Id.* at 354. Essentially, this was a situation where the appellate court reminded the bankruptcy court that it could not overstep the bounds of authority vested in it by Fed. R. Civ. P. 56(e) by making determinations contrary to the uncontested evidence that favors the non-movant. *Id.* at 359 ("Here, the bankruptcy court appears to have

---

[20] In a footnote, Scott states that the Michigan U.S. District Court was not required to make credibility or good faith determinations in ruling on summary judgment. This comment is wholly misleading because the citation quoted by Scott relates to the legal standard applicable to the Michigan U.S. District Court with respect to the issue of MHC's termination of Scott, and not the issue of Scott's litigation misconduct. [Scott Brief at 30, fn. 7.] With respect to the bases for sanctioning Scott, the Michigan U.S. District Court was required to, and did, make determinations regarding "bad faith" conduct. [JA 599-602.]

disregarded the procedural posture of the case and the summary judgment principles that give French the benefit of all reasonable inferences.").[21]

Extrapolating the language in *French* to the present situation is not appropriate because, unlike the bankruptcy court criticized in *French*, the Michigan U.S. District Court had at its disposal an extensive factual record through which it could reasonably and reliably determine the credibility, honesty, intent and motive of all actors, including – and especially – Scott.[22]  Thus, the Michigan U.S. District Court had a significant basis in fact to discount Scott's contested testimony and make determinations adverse to her on issues of credibility, honesty, intent and motive.  Scott, for example, could not create a material issue of fact regarding the accuracy (or her falsification) of the corporate board minutes through her affidavit testimony when the minutes of the meeting ***that she produced and admitted altering*** reflected conversations that did not occur and the absence of

---

[21] It is established case law that Fed. R. Civ. P. 56(e) compels the court in a summary judgment context to make determinations by viewing all facts and all ***reasonable*** inferences in the light most favorable to the non-moving party.  *See*, *e.g.*, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Of course, it does not require that the court make ***any and all*** inferences in favor of the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

[22] The Sixth Circuit, in affirming the Michigan U.S. District Court's sanctions opinions, expressly noted that Judge Enslen's credibility determinations are "most simply and logically explained by the evidence in the record," which showed that Scott was simply not credible.  [JA 651.]

actions that did appear on the tape recording of the meeting *that she produced*. [JA 513-516.]  Scott could not un-ring by affidavit or by oral testimony the factual bells she had already rung by her express admissions.  The Michigan U.S. District Court ultimately held that based on the voluminous record Scott had proven herself to not be credible by "deny[ing] secret wrongdoing, until confronted with undeniable evidence of it."  [JA 594.]  It was therefore possible, and appropriate, for the Michigan U.S. District Court to conclusively determine Scott's credibility, honesty, intent and motive on the basis of documentary testimony and evidence presented to it in the record.  *See Watts v. U.S.*, 841 F.2d 275, 277 (9th Cir. 1987) (finding that a hearing was not necessary where several matters in the record, when viewed in combination, disproved a litigant's allegations).  The NC U.S. District Court determined as much by noting that "as the fourth separate Federal Court to review this record, the court agrees Scott's bad faith is *established by the documented record evidence*.  No amount of live testimony or cross examination could possibly refute this record." [JA 60.]

In addition, unlike the procedural posture in *French*, the issues of Scott's litigation misconduct and the injuries to Metropolitan resulting therefrom were not before the Michigan U.S. District Court as a summary judgment motion. Consequently, Scott was not entitled to the same presumptions and inferences she was entitled to on summary judgment per Fed. R. Civ. P. 56.  Thus, the Michigan

U.S. District Court was under no obligation to defer findings of fact to a jury, and the Michigan U.S. District Court held the role of trier of fact. This empowered the Michigan U.S. District Court to act like a jury and weigh the evidence before it without being required to give Scott the benefit of all reasonable inferences. As such, the issue of willfulness was actually litigated notwithstanding the Michigan U.S. District Court's (or the Bankruptcy Court's) decision to not hold an evidentiary hearing or a trial.

### D.      The Bankruptcy Court Correctly Applied Collateral Estoppel

1.      *Scott's Failure to Request an Evidentiary Hearing on the Issue of Sanctions Weighs Heavily in Favor of the Application of Collateral Estoppel*

The doctrine of collateral estoppel is meant to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In light of the underlying policy of judicial economy, a litigant must show that there is a "clear and convincing need for a new determination" where her request for a later court to not apply collateral estoppel is based on an inadequate opportunity to a full and fair adjudication in the prior action. *See*

Restatement (Second) of Judgments § 28(5).  This is especially the case where the litigants to both actions are identical.[23]

Scott cannot meet the "clear and convincing" standard articulated in the Restatement (Second) of Judgments for the non-application of collateral estoppel because, as previously discussed, she never requested that the Michigan U.S. District Court grant a hearing on the issue of her litigation misconduct.  Having failed to request a hearing, notions of equity preclude her from arguing that the lack of such a hearing was inequitable as to her.  Such notions are more acute given that she actively participated in addressing the issue of her litigation misconduct through the submission of numerous pleadings and exhibits, but failed to request the relief she now asserts was improperly not provided.  Judicial economy would be gutted if every litigant could re-litigate an issue that he previously lost simply because he was not granted a procedural opportunity *he did not request*.  *See, e.g.*, *Bush v. Balfour Beatty Bahamas (In re Bush)*, 62 F.3d 1319, 1324 (11th Cir. 1995) ("It would be undeserved to give debtor/defendant a second

---

[23] As the Bankruptcy Court correctly noted, the concept of collateral estoppel has been applied absent mutuality of the parties since the United States Supreme Court relaxed the need for mutuality in *Blonder-Tongue Labs, Inc.* subject to certain equitable considerations.  Where, however, "the parties to both actions are identical, the arguments supporting the doctrine [of collateral estoppel] – judicial economy, consistency, and incentive for vigorous and thorough litigation – are at their strongest."  [JA 274.]

bite at the apple when he knowingly chose not to defend himself in the first instance.").

2.    *The Sanctions Opinions are Meant to Address Litigation Misconduct and do not Pose a Risk to Future Whistleblowing Activity*

The Michigan U.S. District Court sanctioned Scott in connection with her litigation misconduct undertaken in connection with the prosecution of an illegitimate and baseless suit against Metropolitan for wrongful termination.  [JA 593.]  Scott prosecuted that suit for over a year after Metropolitan and the United States had agreed to settle the *qui tam* portion of the Michigan Action in which Scott alleges to have undertaken "whistleblowing" activities.  The Michigan U.S. District Court's sanctions opinions could not reasonably be interpreted to chill future whistleblowing activities because the sanctions imposed therein were specifically tied to Scott's improper conduct in prosecuting a suit she knew to be false and such opinions make that abundantly clear.  The Michigan U.S. District Court was sensitive to the need for heightened whistleblower protection in its September 2005 sanctions opinion when it stated as follows:

> The Court does believe that a whistleblower has a qualified privilege to retain certain workplace records to prove fraud under circumstances when the retention of the property constitutes "protected activity" under the statutory authorization to report and investigate wrongdoing.  *See* 31 U.S.C. § 3730(h).  However, this privilege must be exercised consistent with its limited purpose, the Congressional scheme, and consistent with the rights of the property

41

owner. . . . ***Such a limited privilege is not a right to plunder and ambush***.

[JA 516, fn. 5 (emphasis added).]  Thus, it is highly doubtful that individuals contemplating undertaking whistleblowing activities will read the Michigan U.S. District Court's sanctions opinions for anything other than what they are – an attempt to compensate Metropolitan for injuries resulting from specific and documented litigation misconduct that Scott undertook solely for the prospect of significant illegitimate self-enrichment.

## CONCLUSION

The Michigan U.S. District Court determined, after reviewing a thorough record constructed by Metropolitan and Scott, that Scott had engaged in such egregious litigation misconduct that "[l]eniency in sanction is not advised by the conduct of Mary Scott nor the precepts of justice."  [JA 594.]  The Lower Courts agreed with the Michigan U.S. District Court's findings that Scott had engaged in "bad faith" conduct during the course of the litigation, and therefore correctly held that the Michigan U.S. District Court's findings of egregious litigation misconduct were entitled to preclusive effect for purposes of determining that the debt associated therewith is non-dischargeable pursuant to § 523(a)(6). Notwithstanding her extensive participation in briefing the issue of her litigation misconduct, Scott complains that she has been wrongfully deprived of her "day in court" and therefore the Michigan U.S. District Court's findings are not entitled to

preclusive effect. Having failed to request a hearing before the Michigan U.S. District Court, however, Scott was not deprived of this right. Rather, she deprived herself of that right by not timely asserting it before the Michigan U.S. District Court. The Bankruptcy Court's decision to apply collateral estoppel as to the issue of Scott's litigation misconduct in two separate orders, and the NC U.S. District Court's affirmance of the same, is consistent with applicable law. Consistent with the law, and based on the facts of this case, this Circuit Court should affirm the NC U.S. District Court's reasoned order.

Dated: December 13, 2013.

MOORE & VAN ALLEN PLLC

/s/ Edward L. Embree, III
Edward L. Embree, III (N.C. Bar No. 1344)
P.O. Box 13706
Research Triangle Park, North Carolina 27709
(919) 286-8000
edembree@mvalaw.com

Luis M. Lluberas (N.C. Bar No. 38320)
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003
(704) 331-1000
luislluberas@mvalaw.com

*Attorneys for Metropolitan Health Corporation (d/b/a Metropolitan Hospital) and Michael Faas, Appellees*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*10,842*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>December 13, 2013</u>          <u>/s/ Edward L. Embree, III</u>
                                        *Counsel for Appellees*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 13th day of December, 2013, I caused this Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Joseph S. Dowdy
> NELSON MULLINS RILEY & SCARBOROUGH, LLP
> Glenlake One
> 4140 Parklane Avenue, Suite 200
> Raleigh, North Carolina  27612
> (919) 329-3867
>
> *Counsel for Appellant*

I further certify that on this 13th day of December, 2013, I caused the required copies of the Brief of Appellees to be hand filed with the Clerk of the Court.

/s/ Edward L. Embree, III
*Counsel for Appellees*